**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* [SEALED],<br><br>        Plaintiff,<br><br>            – Against –<br><br>[SEALED],<br><br>        Defendant. | Civil Action No _____<br><br>**FALSE CLAIMS ACT COMPLAINT**<br><br>and<br><br>**JURY DEMAND**<br><br>**[FILED UNDER SEAL]** |

**FILED IN CAMERA AND UNDER SEAL UNDER**
**31 U.S.C. § 3730(b)(2)**
**DO NOT POST ON ECF**
**DO NOT PUT IN PRESS BOX**

Law Offices of Darth M. Newman LLC
1140 Thorn Run Rd, #601
Coraopolis, PA 15108
(412) 436-3443

*Counsel for Plaintiff Relator*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ZACHARY HOLTZMAN,<br><br>      *Plaintiff,*<br><br>          v.<br><br>Huron Capital Partners; Albireo Energy, LLC; Sciens Building Solutions, LLC; Pueblo Mechanical and Controls, LLC; Ronnoco Coffee LLC; Hanson Holdings LLC; Drake Automotive Group, LLC; Direct Connect Logistix, Inc.; M7D Corporation d/b/a WD Lab Grown Diamonds; Intervision Systems LLC; Lab Crafters Inc.; and Carlyle,<br><br>      Defendants. | Civil Action No _____<br><br>**FALSE CLAIMS ACT COMPLAINT**<br><br>and<br><br>**JURY DEMAND**<br><br>**[FILED UNDER SEAL]** |

*Qui tam* plaintiff and Relator Zachary Holtzman, through his undersigned attorney, and hereby brings this action on behalf of the United States of America, against:

- Huron Capital Partners;

- Albireo Energy, LLC;

- Sciens Building Solutions, LLC;

- Pueblo Mechanical and Controls, LLC;

- Ronnoco Coffee LLC;

- Hanson Holdings LLC;

- Drake Automotive Group, LLC;

- Direct Connect Logistix, Inc.;

- M7D Corporation d/b/a WD Lab Grown Diamonds;

- Intervision Systems LLC;

- Lab Crafters Inc.; and

- Carlyle[1].

The claims asserted in this Complaint are based on Defendant(s) submitting, or causing to be submitted, materially false applications for Paycheck Protection Program ("PPP") loan and related forgiveness despite not qualifying for the loans and/or forgiveness of the loans. Defendants' applications included materially false statements or material omissions about the existence of affiliated employees, the fact that Defendants do not qualify as "small" under the relevant SBA standards and alternative size standards, the lack of need for the capital infusion, and the inability to access alternative sources of capital.

The subject PPP loan applications were approved in April of 2020 and January and March of 2021 for a total amount of $40,646,977 and were forgiven for a total amount of $41,386,654 that would not otherwise have been paid but for the false claims described herein. The claims are based on the facts and information set forth below.

---

[1] Carlyle is only responsible for the false claims and loan and forgiveness monies related to Sciens Building Solutions, LLC.

## TABLE OF CONTENTS

NATURE OF THE CLAIM ...................................................................................6

PARTIES ..........................................................................................................6

    A.  Relator – Zachary Holtzman ...................................................................6

    B.  Huron Capital Partners, LLC ..................................................................6

    C.  Albireo Energy, LLC ...............................................................................7

    D.  Sciens Building Solutions, LLC ...............................................................8

    E.  Pueblo Mechanical & Controls, LLC .......................................................8

    F.  Ronnoco Coffee LLC ..............................................................................9

    G.  Hanson Holdings LLC .............................................................................9

    H.  Drake Automotive Group LLC ................................................................9

    I.  Direct Connect Logistix, Inc. ................................................................10

    J.  M7D Corporation d/b/a WD Lab Grown Diamonds .................................10

    K.  Intervision Systems LLC ......................................................................11

    L.  LAB Crafters Inc. .................................................................................11

    M.  The Carlyle Group Inc. .........................................................................11

JURISDICTION AND VENUE ............................................................................12

FACTS ...........................................................................................................12

    I.  Governing Law .....................................................................................12

        A.  The Federal False Claims Act ...........................................................12

        B.  The Paycheck Protection Program ....................................................14

            i.  Affiliation Rules ........................................................................15

    II.  Violations of the False Claims Act .........................................................17

        A.  PPP Loan Applications .....................................................................18

        B.  Knowingly False Statements ............................................................19

            i.  Too Many Employees .................................................................20

            ii.  Alternative Size Standards ........................................................20

            iii.  No Financial Need ...................................................................22

        C.  Liability of HCP ...............................................................................23

D.  Liability of Carlyle ...........................................................................................................24

**CAUSES OF ACTION**...............................................................................................**24**

## NATURE OF THE CLAIM

1.      Relator sues Defendants to recover treble damages and civil penalties on behalf of the United States of America for Defendants' false applications for a PPP loan and forgiveness which information was submitted in whole or in part to the Small Business Administration ("SBA") by and through various banking institutions.

2.      Defendants knew the PPP loan and forgiveness applications did not meet the established criteria set by the SBA to obtain the PPP loan or forgiveness funds.

3.      Defendants engaged in the submission of false claims to the United States in violation of the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA").

## PARTIES

### A.      Relator – Zachary Holtzman

4.      Mr. Holtzman is an individual resident and domiciliary of the Commonwealth of Pennsylvania.

### B.      Huron Capital Partners, LLC

5.      Huron Capital Partners ("HCP") is a Michigan registered limited liability company with a principal address of 3410 Belle Chase Way, STE 600, Lansing, MI 48911.

6.      HCP owns, controls, and/or directs the business activities of Albireo Energy, LLC, Sciens Building Solutions, LLC, Pueblo Mechanical and Controls, LLC, Ronnoco Coffee LLC, Hanson Holdings LLC, Drake Automotive Group, LLC, Direct Connect Logistix, Inc., M7D Corporation d/b/a WD Lab Grown Diamonds, Intervision

Systems LLC, and Lab Crafters Inc. which each applied for and obtained PPP loan funds and forgiveness to which they were not entitled or eligible.

7.      HCP owns many portfolio companies some of which are registered to do business in New Jersey and/or maintain physical locations in New Jersey.

8.      For example, Defendant Albireo Energy  is registered to do business in New Jersey and its principal place of business is 3 Ethel Rd, Edison, NJ 08817.

9.      Sciens Building Solutions is registered to do business in New Jersey and has a physical location at 51 Suttons Ln., Piscataway, NJ 08854.

**C.      Albireo Energy, LLC**

10.      Albireo Energy, LLC is a limited liability company organized under the laws of the State of Michigan and shares a registered office with HCP at 3410 Belle Chase Way, STE 600, Lansing, MI 48911 and has its headquarters at 3 Ethel Rd, Edison, NJ 08817.

11.      Albireo Energy is owned and controlled by HCP.

12.      Albireo Energy took a PPP loan in the amount of $10,000,000 and then forgiveness of $10,276,578 to which it was not entitled.

13.      Albireo's business is to serve as a holding company that permits HCP to acquire other "regional and niche energy service providers."[2]

---

[2] https://www.huroncapital.com/news/huron-capital-launches-energy-services-platform, last visited July 10, 2024.

D.    **Sciens Building Solutions, LLC**

14.    Sciens Building Solutions is a limited liability company organized under the laws of the State of Delaware with a principal place of business at 5925 Stoneridge Dr., Pleasanton, CA 94588.

15.    Between September 2016 and December 2021, Sciens Building Solutions was owned and controlled by HCP.

16.    From December 2021 to the present, Sciens Building Solutions has been jointly owned and controlled by HCP and The Carlyle Group Inc. ("Carlyle") or another entity or fund or funds controlled by or controlling Carlyle.

17.    Sciens Building Solutions took a PPP loan in the amount of $8,854,740 and then forgiveness of $9,101,089 to which it was not entitled.

E.    **Pueblo Mechanical & Controls, LLC**

18.    Pueblo Mechanical & Controls is a limited liability company organized under the laws of the state of State of Delaware with a principal address of 6771 E Outlook Dr., Tucson, AZ 85756.

19.    At all times relevant here, Pueblo Mechanical & Controls was owned and controlled by HCP.

20.    Pueblo Mechanical & Controls took a PPP loan in the amount of $6,126,592 and then forgiveness of $6,195,346 to which it was not entitled.

F.    **Ronnoco Coffee LLC**

21.    Ronnoco Coffee aka Ronnoco Beverage Solutions is a limited liability company organized under the laws of the state of Delaware with a principal office at 4241 Sarpy Ave, Saint Louis, MO 63110.

22.    Ronnoco Coffee is owned and controlled by HCP.

23.    Ronnoco Coffee took a PPP loan in the amount of $3,538,763 and then forgiveness in the amount of $3,563,141 to which it was not entitled.

G.    **Hanson Holdings LLC**

24.    Hanson Holdings is a limited liability company organized under the laws of the state of Michigan with a principal place of business at 977 E 14 Mile Rd., Troy, MI 48083.

25.    Hanson Holdings is owned and controlled by HCP.

26.    Hanson Holdings took two PPP loans in the amount of $2,481,100 and $2M and then forgiveness in the amount of $2,508,154 and $2,012,274 to which it was not entitled.

H.    **Drake Automotive Group LLC**

27.    Drake Automotive Group is a limited liability company organized under the laws of the state of Delaware with a principal place of business at 130 Cassia Way, Henderson, NV 89014.

28.    At the time Drake Automotive applied for and received PPP loan funds, it was owned and controlled by HCP.

29.     In November 2020 HCP split Drake Automotive into component parts retaining ownership and control over the off-road enthusiast brands and selling the rest of the company to Holley Inc. for approximately $49M.

30.     Drake Automotive Group took a PPP loan in the amount of $2,080,050 and then forgiveness in the amount of $2,103,945 to which it was not entitled.

**I.      Direct Connect Logistix, Inc.**

31.     Direct Connect Logistix is a corporation organized under the laws of the state of Indiana with a principal place of business at 314 West Michigan Street, Indianapolis, IN, 46202.

32.     Direct Connect Logistix is owned and controlled by HCP.

33.     Direct Connect Logistix took a PPP loan in the amount of $1,972,900 and then forgiveness in the amount of $1,995,224 to which it was not entitled.

**J.      M7D Corporation d/b/a WD Lab Grown Diamonds**

34.     M7D Corporation is a corporation organized under the laws of the state of Deleware with a principal place of business at 6710 Virginia Manor Rd., Beltsville, MD 20705.

35.     M7D Corporation is owned and controlled by HCP.

36.     M7D Corporation took a PPP loan in the amount of $1,284,230 and then forgiveness in the amount of $1,296,323 to which it was not entitled.

**K.**    **Intervision Systems LLC**

37.    Intervision Systems is a limited liability company organized under the laws of the state of Delaware with a principal place of business at 16401 Swingley Ridge Rd Suite 500, Chesterfield, MO 63017.

38.    Intervision Systems is owned and controlled by HCP.

39.    Intervision Systems took a PPP loan in the amount of $1,720,892 and then forgiveness in the amount of $1,740,317 to which it was not entitled.

**L.**    **LAB Crafters Inc.**

40.    LAB Crafters is a corporation organized under the laws of the state of New York with a principal place of business at 2085 Fifth Avenue, Ronkonkoma, NY 11779

41.    LAB Crafters is owned and controlled by HCP.

42.    LAB Crafters took a PPP loan in the amount of $587,710 and then forgiveness in the amount of $594,263 to which it was not entitled.

**M.**    **The Carlyle Group Inc.**

43.    The Carlyle Group Inc. ("Carlyle") is a multinational private equity company organized as a corporation under the laws of the State of Delaware with a principal place of business at 1001 Pennsylvania Avenue NW, Washington, DC 20004-2505.

44.    In December of 2021, Carlyle, or a related and/or affiliated entity, fund, or funds owned or controlled by Carlyle or which owns or controls Carlyle, purchased from HCP a majority interest in Sciens Building Solutions, LLC.

45.     More than a year later, Sciens Building Solutions obtained forgiveness of its PPP loan to which it was not entitled.

## JURISDICTION AND VENUE

46.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1345 because this action involves a federal question and the United States is plaintiff. This Court also has subject matter jurisdiction under 31 U.S.C. § 3732(a).

47.     The Court may exercise personal jurisdiction over Defendants under 31 U.S.C. § 3732(a). The Court has personal jurisdiction over Defendants because, by virtue of the scheme described herein, they transact business within this District.

48.     Venue is proper in this District under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) & (c) because Defendants transact business or can be found within this District and a substantial part of the events establishing the alleged claims arose in this District.

49.     Under 31 U.S.C. § 3730(b)(2), this Complaint was filed in camera and under seal and shall not be served on Defendants until the Court so orders.

## FACTS

**I.     Governing Law**

**A.     The Federal False Claims Act**

50.     The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval," "knowingly makes, uses, or causes to be made or used, a false record or

statement material to a false or fraudulent claim," or conspires to do so.  31 U.S.C. §

3729(a)(1).

51.    As of the date of filing, any person found to have violated these provisions

is liable for a civil penalty of not less than $13,9468 and not more than $27,894 for each

such violation, plus three times the damage sustained by the Government.

52.    The FCA imposes liability where conduct is "in reckless disregard of the

truth or falsity of the information" and clarifies that "no proof of specific intent to

defraud is required." 31 U.S.C. § 3729(b).

53.    The FCA also broadly defines a "claim" to include "any request or demand,

whether under a contract or otherwise, for money or property and whether or not the

United States has title to the money or property, that - ... is made to a contractor,

grantee, or other recipient if the money or property is to be spent or used on the

Government's behalf or to advance a Government program or interest ... " 31 U.S.C. §

3729(b)(2)(A).

54.    The FCA empowers private persons having information regarding a false

or fraudulent claim against the Government to sue on behalf of the Government and to

share in any recovery. The complaint must be filed under seal without service on any

defendant. The complaint remains under seal while the Government conducts an

investigation of the allegations and determines whether to intervene. 31 U.S.C. §3730(b).

**B.**    **The Paycheck Protection Program**

55.    The Paycheck Protection Program ("PPP") is the United States Government

business loan program established in 2020 through the Coronavirus Aid, Relief, and

Economic Security Act ("CARES Act") to help certain businesses, self-employed workers,

sole proprietors, certain nonprofit organizations, veterans' organizations, and tribal

businesses to continue paying their workers. The program is implemented by the U.S.

Small Business Administration ("SBA").

56.    The PPP allowed qualified entities to apply for low-interest private loans to

pay for their payroll and certain other operating costs. Under the PPP, the allowable

amount of a PPP loan was calculated based on the borrowing entity's average monthly

payroll costs multiplied by 2.5.[3]

57.    The PPP loan had to be used to cover payroll costs, rent, interest, and

utilities.

58.    The loan may be partially or fully forgiven if the business keeps its

employee counts and employee wages stable.

59.    The deadline for entities to apply for a PPP loan was initially June 30, 2020,

which was later extended to August 8, 2020.

---

[3] *See* How to Calculate Maximum Loan Amounts – by Business Type, U.S. Small Business
Administration, (Jun. 26, 2020) https://www.sba.gov/sites/default/files/2020-06/How-to-
Calculate-Loan-Amounts-508_1.pdf (last visited September 7, 2022).

60.     The PPP was reopened on January 11, 2021. The Program ended on May

31, 2021.[4]

61.     The PPP was added under Section 1102 of the CARES Act by amending

Section 7(a) of the Small Business Act, 15 U.S.C. § 636(a) *et seq.*, which temporarily

permitted the SBA to guarantee 100 percent of the PPP loans.

62.     Section 1106 of the CARES Act, which also amended Section 7(a), further

provides for forgiveness of up to the full principal amount of qualifying loans

guaranteed under the PPP.

   i.   *Affiliation Rules*

63.     The PPP loan program was designed and intended to benefit small

businesses.

64.     For the purposes of first round PPP loans, the relevant statutes and

regulations defined small businesses as those entities with 500 or fewer employees.

65.     SBA's existing affiliation rules apply to the PPP loan program's definition of

small businesses. In other words, all employees of the entities under the same

ownership or control "count" towards the 500-employee limit.

---

[4] *See* Paycheck Protection Program, U.S. SMALL BUSINESS ADMINISTRATION,
https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-
protection-program (last visited Dec. 9, 2021).

66.    13 C.F.R. 121.106 (a) sets out how the SBA calculates the number of

employees, in pertinent part, as follows:

> (a) In determining a concern's number of employees, SBA counts all individuals employed on a full-time, parttime, or other basis. This includes employees obtained from a temporary employee agency, professional employer organization or leasing concern. SBA will consider the totality of the circumstances, including criteria used by the IRS for Federal income tax purposes, in determining whether individuals are employees of a concern.

67.    The SBA repeatedly clarified that the affiliation rules at 13 C.F.R. §

121.301(f) applied to PPP loans and that for the purposes of counting employees, all

foreign and domestic affiliated employees **must** be counted. For example, the SBA's

March 12, 2021, FAQs included question 44 on this topic:

> 44. **Question:** How do SBA's affiliation rules at 13 C.F.R. 121.301(f) apply with regard to counting the employees of foreign and U.S. affiliates?
>
> **Answer:** For purposes of the PPP's 500 or fewer employee size standard (or 300 employee size standard for Second Draw PPP Loans and certain entities for First Draw PPP Loans), an applicant **must count all of its employees and the employees of its U.S and foreign affiliates**, absent a waiver of or an exception to the affiliation rules. 13 C.F.R. 121.301(f)(6). Business concerns seeking to qualify for a First Draw PPP Loan as a "small business concern" under section 3 of the Small Business Act (15 U.S.C. 632) on the basis of the employee-based size standard must do the same.

March 12, 2021 SBA FAQs (emphasis added).

68.    The applicable affiliation rules appear at 13 C.F.R. § 121.301.

> Concerns and entities are affiliates of each other when one controls or has the power to control the other, **or a third party or parties controls or has the power to control both**. It does not matter whether control is exercised, so long as the power to control exists.

13 C.F.R. § 121.301(f) (emphasis added).

16

> For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity.

13 C.F.R. § 121.301(f)(1).

69.    The affiliation rules presented a special problem for certain industries which typically organize themselves as several nominally individual businesses owned or controlled by a single entity.

70.    To address this reality, Congress provided statutory carveouts for certain parts of the hospitality industry and some franchise businesses. *See* 15 U.S.C. § 636(A)(36)(D)(iv).

71.    Importantly, no such carveout exists for any of the Defendants named herein.

72.    The SBA often specifically warned potential borrowers that civil and criminal liability could attach to false applications. *See e.g.,* 85 Fed. Reg. 20811 at 20814 (April 15, 2020).

**II.    <u>Violations of the False Claims Act</u>**

73.    Defendants violated the False Claims Act by submitting materially false applications and supporting materials in connection with applications for PPP loans and then forgiveness of those loans.

A.    **PPP Loan Applications**

74.    Defendants applied for and obtained a series of PPP loans and then forgiveness of those loans to which they were not entitled.

75.    The below chart displays the name of the company, the date PPP loans were issued to them, the amount of any PPP loans, the dates and amounts of any forgiveness, and the number of jobs the company reported in connection with each loan.

| Company | Loan Date | Amount | Forgiveness Date | Forgiveness Amount | Reported Employees |
|---|---|---|---|---|---|
| Albiereo Energy | April 14, 2020 | $10,000,000 | January 26, 2023 | $10,276,578 | 500 |
| Sciens Building Solutions | April 13, 2020 | $8,854,740 | February 1, 2023 | $9,101,089 | 500 |
| Pueblo Mechanical & Controls | April 27, 2020 | $6,126,592 | June 17, 2021 | $6,195,346 | 480 |
| Ronnoco Coffee | January 25, 2021 | $3,538,763 | October 5, 2021 | $3,563,141 | 278 |
| Hanson Holdings | April 27, 2020 | $2,481,100 | June 9, 2021 | $2,508,154 | 282 |
| Hanson Holdings | March 20, 2021 | $2,000,000 | November 2, 2021 | $2,012,274 | 282 |
| Drake Automotive | April 14, 2020 | $2,080,050 | June 11, 2021 | $2,103,945 | 157 |

| | | | | | |
|---|---|---|---|---|---|
| Direct Connect Logistix | April 30, 2020 | $1,972,900 | June 30, 2021 | $1,995,224 | 137 |
| M7D Corporation | March 12, 2021 | $1,284,230 | February 25, 2022 | $1,296,323 | 95 |
| Intervision Systems | April 27, 2020 | $1,720,892 | June 15, 2021 | $1,740,317 | 75 |
| LAB Crafters | April 27, 2020 | $587,710 | June 11, 2021 | $594,263 | 37 |
| **TOTALS** | | **40,646,977** | | **$41,386,654** | **2,541** |

**B.    Knowingly False Statements**

76.    Each of the above-described PPP loan and forgiveness applications

constitute false claims.

77.    Each of the above-described PPP loan and forgiveness applications are

false because they make, at a minimum, the below false statements:

      a.  The number of jobs reported do not account for the SBA's affiliation rules and thereby meaningfully and falsely underreport the number of jobs or employees at issue;

      b.  Upon information and belief, the applications falsely attest that each company lacks access to other sources of liquidity; and

      c.  Upon information and belief, the applications falsely attest to compliance with the PPP program and entitlement to the PPP loan and forgiveness funds.

78.    In addition, as to Intervision Systems specifically, the number of reported

jobs is insufficient to support the amount of money received.

### i.   *Too Many Employees*

79.     In reality, each of the Defendant companies that obtained PPP loans are affiliated with each other and with HCP as the word "affiliation" is defined and used in the relevant SBA regulations.

80.     Counting only the employees listed in the applications listed above, Defendants have 2,541 employees and none of them can qualify for PPP loan funds or forgiveness.

81.     In addition, through HCP, each Defendant was affiliated with many hundreds of additional employees.

82.     For example, just one of the many other portfolio companies owned by HCP between 2020 and 2022, Highstreet Insurance Partners, had over 600 employees.

83.     As a result, none of the Defendant Companies that applied for and received PPP and forgiveness monies qualified for PPP loans or forgiveness making each of the applications false at least insofar as each reported or attested to compliance with the PPP loan and forgiveness program rules, regulations, and laws.

### ii.   *Alternative Size Standards*

84.     The SBA's alternative size standards provides an alternative metric, either a total annual receipts or alternative number of employees, for determining company size for companies in certain NAICS Code categories.

85.     Just as the proper counting of employees must include the employees of all affiliates, so to must any calculation of annual receipts include the revenue of all affiliates. 13 CFR § 121.104.

86.     While some of the Defendant companies claimed NAICS Codes subject to alternative size standards, none of those alternative size standards are met here.

87.     For example, Albiero Energy claims NAICS code 238290 (Other Building Equipment Contractors) which has a revenue alternative size standard of $16.5M and Intrervision Systems claims NAICS code 541512 (Computer Systems Design Services) which has a revenue alternative size standard of $30M.

88.     However, Albiero Energy alone generated $300M in revenue in 2021 alone.

89.     Counting only Albiero Energy's revenues is sufficient to eliminate all other applicable revenue-based alternative size standards here.

90.     Naturally, adding HCP's other sources revenue, as required, just emphasizes the point.

91.     For example, during the pandemic, both Pueblo Mechanical & Controls and Ronnoco Coffee had over $100M annual in revenue.

92.     As to alternative employee standards, the largest available alternative, which does not apply to any Defendant is only 1,500 employees. Defendants blast past this largest possible alternative by more than more than double.

93.     Regardless of which standard is applied, Defendants did not qualify for the loans or forgiveness they sought and received.

### iii.    *No Financial Need*

94.     In addition, HCP and its portfolio companies did not lack access to other sources of liquidity at the time they applied for PPP loans and forgiveness.

95.     Far from experiencing economic uncertainty, the pandemic created business opportunities for a cash-rich HCP and HCP appears to have thrived through the pandemic.

96.     In 2020, it offered cash to other companies that were struggling.[5]

97.     Much to the contrary, "2020 was the second most active year in Huron's 21-year history."[6]

98.     In 2020, HCP completed 27 transactions, more than in any other year in its history.

99.     The success continued in 2021:

No matter how you measure it, 2021 was a stellar year for Huron Capital and its portfolio companies. Over the course of the year, our deal teams successfully completed 41 transactions that included 27 add-on

---

[5] https://www.huroncapital.com/news/bridging-the-gap-with-huron-flex-equity, last visited July 11, 2024.

[6] https://www.huroncapital.com/news/huron-capital-marks-2nd-most-active-year-in-firm-history, last visited July 11, 2024.

acquisitions, eight exits, and six new platform companies. All three of those achievements set new high-water marks for our firm.[7]

100.    In addition, several of the Defendant portfolio companies themselves completed acquisitions during the pandemic and after receiving PPP funds.

101.    For example, Albireo Energy bought Automated Building Controls Specialist LLC approximately 4 months after receiving $10M in PPP funds to which it was not entitled.

102.    Pueblo Mechanical & Controls completed two acquisitions in the summer of 2021 and within 2.5 months of receiving PPP forgiveness.

103.    Less than 2 weeks before receiving nearly $2M in PPP funds it was not entitled to, Direct Connect Logistix announced it was hiring 20 specialists and expanding its office space by 5,000 square feet.

### C.    **Liability of HCP**

104.    HCP is a private equity company which owns or controls other funds and entities which themselves own or control various portfolio companies including the Defendant companies (other than HCP itself and Carlyle.

105.    It is through this ownership and control that HCP is liable for the false PPP loan and forgiveness applications and monies received by the other named Defendants other than Carlyle.

---

[7] https://www.huroncapital.com/news/2021-year-in-review, last visited July 11, 2024.

### D.    Liability of Carlyle

106.    Defendant Sciens Building Solutions obtained nearly $9M in PPP funds in April 2020 when it was owned and controlled by HCP.

107.    Then, in December of 2021, HCP sold its majority stake in Sciens Building Solutions to Carlyle.

108.    Sciens Building Solutions did not receive forgiveness of its PPP loan until February 2023, more than a year into Carlyle's ownership and control of the company.

109.    In this way, both HCP and Carlyle are liable for the false loan and forgiveness applications submitted by Sciens Building Solutions.

110.    Carlyle is not alleged to be liable for the PPP loans, forgiveness, or false claims of any other Defendant named herein.

## CAUSES OF ACTION

### COUNT I
### Violations of the False Claims Act: Presenting or Causing a False Claim
### (31 U.S.C. § 3729(a)(1)(A))

111.    The foregoing allegations are repeated and realleged as if fully set forth herein.

112.    The False Claims Act, 31 U.S.C. § 3729(a)(1)(A), imposes liability upon those who knowingly present or cause to be presented false claims for payment or approval.

113.    Defendants knowingly and willfully violated the False Claims Act by presenting, or causing to be presented, false claims for payment or approval.

114.    Specifically, and as alleged in more detail above, Defendants presented, or caused to be presented, materially false applications for PPP loan funds and then for forgiveness of the resulting loans.

115.    Defendants certified compliance with applicable PPP laws, rules, and regulations despite not being compliant.

116.    Defendants similarly certified the existence of facts which were not true.

117.    Defendants knew or should have known (as defined in 31 U.S.C. § 3801(a)(5)) that the facts and certifications to which they attested were not true and that they made, presented, or submitted, or caused to be made, false or fraudulent claims for payment to the government.

118.    Each of the applications submitted or caused to be submitted by Defendants is a separate false and fraudulent claim.

119.    Defendants presented or caused to be presented these claims knowing their falsity, or in deliberate ignorance or reckless disregard that such claims were false.

120.    The United States was unaware of the foregoing circumstances and conduct of Defendants and, in reliance on said false and fraudulent claims, authorized payments to be made to or on behalf of Defendants, made such payments, and has been damaged.

121.    Because of these false or fraudulent claims submitted or caused to be submitted by Defendants, the United States has been damaged in an amount to be determined at trial.

**COUNT II**
**Violations of the False Claims Act:**
**Making, Using, or Causing to be Used a False Record or Statement**
**(31 U.S.C. § 3729(a)(1)(B))**

122.    The foregoing allegations are repeated and realleged as if fully set forth herein.

123.    The False Claims Act, 31 U.S.C. § 3729(a)(1)(B), imposes liability upon those who knowingly make, use, or cause to be made or used, false records or statements material to a false or fraudulent claim.

124.    Defendants knowingly and willfully violated the False Claims Act by making, using, or causing to be made or used, false records or statements material to false or fraudulent claims.

125.    Specifically, for purposes of obtaining or aiding to obtain PPP loans and then forgiveness of those loans, Defendants made or presented, or caused to be made or presented, to the United States false or fraudulent applications and/or records, knowing these materials to be false or fraudulent, or acting with reckless disregard or deliberate ignorance thereof.

126.    Each application or record submitted to the Government in support of Defendants' above-described false claims is a separate false record or statement and separate violation of 31 U.S.C. § 3729(a)(1)(B).

127.    The United States was unaware of the foregoing circumstances and conduct of Defendants and, in reliance on said false and fraudulent applications and/or records, authorized payments to be made to or on behalf of Defendants, made such payments, and has been damaged.

128.    Because of these false or fraudulent statements submitted or caused to be submitted by Defendants, the United States paid the claims, resulting in damages to the United States in an amount to be determined at trial.

**COUNT III**
**Violations of the False Claims Act: Conspiring to Violate the False Claims Act**
**(31 U.S.C. § 3729(a)(1)(C))**
**(All Defendants)**

129.    The foregoing allegations are repeated and realleged as if fully set forth herein.

130.    The False Claims Act, 31 U.S.C. § 3729(a)(1)(C), imposes liability upon those who conspire to commit a violation of another sub-section of the False Claims Act.

131.    Defendants knowingly, in reckless disregard, and/or in deliberate ignorance of the truth conspired between themselves, with their employees and administrators, and others, to violate the False Claims Act.

132.    Defendants conspired to submit false and fraudulent claims related to their applications for PPP loan and forgiveness funds and the use of those funds.

133.    Defendants did in fact submit false and fraudulent claims for PPP loan funds and forgiveness.

134.    As a consequence of their conspiracies, the United States paid money in connection with the forgiveness of the PPP loan when it would not have but for Defendants' unlawful conduct.

135.    As a result of this conspiracy, and the resulting false or fraudulent claims submitted or caused to be submitted by Defendants, the United States paid the claim(s), resulting in damages to the United States in an amount to be determined at trial.

**COUNT IV**
**Violations of the False Claims Act: Obligation to Repay**
**(31 U.S.C. § 3729(a)(1)(G))**

136.    The foregoing allegations are repeated and realleged as if fully set forth herein.

137.    The False Claims Act, 31 U.S.C. § 3729(a)(1)(G), imposes liability upon those who knowingly make, use, or cause to be made or used, false records or statements material to an obligation to pay or transmit money or property to the Government, or conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

138.    Upon receipt of improperly obtained PPP loan forgiveness funds, Defendants had an obligation to repay and refund to the Government the amounts paid by the Government.

139.    Defendants knowingly and willfully violated the False Claims Act by failing to so repay or refund the monies received.

140.    The United States was unaware of the foregoing circumstances and conduct of Defendants.

141.    Had the government been aware of Defendants' knowing false certifications and knowing failure to return overpayments it would have taken steps to recover them.

142.    The United States has been damaged as a result in an amount to be determined at trial.

**WHEREFORE, Relator, on behalf of himself as well as the United States requests the following relief:**

a.    A judgment against Defendants, joint and several, in an amount equal to all damages due to the Government, including treble damages, under the FCA;

b.    A judgment against Defendants, joint and several, for all civil penalties due to the Government for Defendant's violations of the FCA;

c.    That Relator recover from Defendants, joint and several, all costs of this action, with interest, including the cost to the Government for its expenses related to this action;

d.    That Relator recover from Defendants, joint and several, all reasonable attorneys' fees in bringing this action;

e.  That Relator be awarded the maximum amount of the proceeds of this action as allowed under 31 U.S.C. § 3730, and/or any other applicable provision of law;

f.  That a trial by jury be held on all issues so triable;

g.  An award of pre- and post-judgment interest; and

h.  Such other and further relief to Relator and/or the United States of America as this Court may deem just and proper.

## **REQUEST FOR TRIAL BY JURY**

Under Rule 38 of the Federal Rules of Civil Procedure, Relator hereby requests a trial by jury.

Dated: July 22, 2024

By:      /s/ *Darth M. Newman*
Darth M. Newman
Law Offices of Darth M. Newman LLC
1140 Thorn Run Rd, # 601
Coraopolis, PA 15108
Telephone:   412-436-3443
Email:        darth@dnewmanlaw.com

*Counsel for Plaintiff Relator*